IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERT ALLISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:13-CV-04245-NKL |
| | ) |
| GEORGE LOMBARDI, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Allison, an inmate housed at the Fulton Reception and Diagnostic Center (FRDC), filed this lawsuit against George Lombardi, Larry Crawford, Bill Harris, and John Doe and alleges a violation of 42 U.S.C. § 1983 arising out John Doe's failure to provide immediate medical care to Allison. Defendants Lombardi, Crawford, and Harris have moved for dismissal of Allison's claim against them. [Doc. 8]. For the reasons set forth below, the motion to dismiss is GRANTED.

**I.     Background**

The following factual allegations are set forth in Allison's Complaint, [Doc. 1], and are accepted as true for purposes of this motion to dismiss. *Charvat v. Mutual First Federal Credit Union*, 725 F.3d 819, 821-22 (8th Cir. 2013). At all times relevant to this case, Allison was incarcerated at FRDC, a correctional facility in Fulton, Missouri. Defendants are George Lombardi, Director of the Missouri Department of Corrections (MDOC) beginning January 29, 2009; Larry Crawford, former Director of the MDOC,

1

Bill Harris, Warden of FRDC, and John Doe, an unidentified correctional officer employed by FRDC.

On January 5, 2009, Allison experienced an erection that lasted longer than four hours. Allison complained of his persistent erection to Defendant John Doe and requested immediate medical attention. Defendant Doe refused to provide Allison with medical attention despite Defendant Doe's observation that Allison was suffering from a persistent erection over an extended period of time without any physical or psychological stimulation. Although Allison continued to complain about the erection, he did not receive medical attention until January 7. On January 7, Allison was examined by two nurses and a physician at FRDC. The physician sent Allison to the emergency room at Capital Region Medical Center in Jefferson City, Missouri. When physicians at Capital Region were unable to remedy Allison's condition, he was transferred to University Hospital in Columbia, Missouri. As a result of the delay in receiving medical treatment, Allison was forced to undergo penile surgery. He underwent a proximal shunt, a proximal cavernosum to spongiosum shot, and a washout and irrigation procedure. He also received a blood transfusion. On January 17, Allison was discharged from University Hospital and returned to FRDC. Over the next two months, he "suffered through a long and painful healing process that included . . . bloody drainage and leaking urine and spraying urine and urinating chunks of meat." Allison now suffers from erectile dysfunction and has a disfiguring scar on his penis.

II.     Discussion

Allison alleges Defendants Lombardi, Crawford, and Harris violated 42 U.S.C. § 1983 because they created a custom, policy, or culture of deliberate indifference to the serious medical needs of inmates in violation of Allison's Eighth Amendment right to be free from cruel and unusual punishment. Lombardi, Crawford, and Harris argue dismissal of Allison's claim against them is appropriate because Allison has failed to state a claim for relief and because they are entitled to qualified immunity.

Section 1983 provides a civil remedy to a person who has been deprived of rights, privileges, or immunities secured by the Constitution and laws when that person was subjected to the deprivation of his rights by a person acting under color of any law. *See* 42 U.S.C. § 1983 (2012). A supervisor may not be vicariously liable under § 1983 for the acts of his subordinates but can be individually liable if he was personally involved, tacitly approved of the subordinate's actions, or approved a policy or directive that led to a constitutional deprivation. *Brown v. Missouri Dep't of Corr.*, 353 F.3d 1038, 1040 (8th Cir. 2004).

Allison alleges his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was denied immediate medical attention for his persistent erection. "A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). To prove deliberate indifference, a plaintiff must "demonstrate that [he] suffered from an objectively serious medical need and the prison officials actually knew of but deliberately disregarded that need. *Id.* (internal quotations omitted). Assuming Allison had a serious

medical need, Allison has not pleaded sufficient facts to support an inference that Lombardi, Crawford, or Harris had personal knowledge of or deliberately disregarded his medical need.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Though Allison states Lombardi, Crawford, and Hill refused to intervene and "turned a blind eye to the deliberately unconstitutional actions of their colleagues and subordinates," [Doc. 1, at p. 5 ¶ 22], Allison does not allege they were notified about or observed his medical needs or John Doe's failure to provide medical attention.  Allison's allegations are conclusions without factual support.  Therefore, Allison has not pleaded sufficient facts to create an inference that Lombardi, Crawford, or Hill were personally involved with or tacitly approved of John Doe's failure to provide Allison medical care.

Even if they did not personally observe or know about Allison's medical needs or approve of his denial of medical attention, Allison alleges Lombardi, Crawford, and Harris, as supervisors of John Doe, "caused and allowed the development . . . of a custom/policy/practice/culture which included a deliberate indifference to the serious medical needs of inmates and of denying or delaying medical treatment to injured or ill inmate." [Doc. 1, at p. 8 ¶ 44].  Allison's Complaint is deficient.  Though he pleads that they "caused and allowed" the development of a policy, this allegation is a legal conclusion without factual support and does not create a reasonable inference that Lombardi, Crawford, or Harris created, either expressly or through omission, a policy of deliberate indifference to inmate medical needs.  *Iqbal*, 556 U.S. at 678.  Nowhere in his Complaint does Allison identify any kind of policy that led to his injuries, what types of policies existed, any facts suggesting John Doe was following a policy or was acting in

4

accordance with a practice or custom, or that correctional officer indifference to inmate medical needs has occurred more than once. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) ("Generally an isolated incident of alleged . . . misconduct . . . cannot, as a matter of law, establish a . . . policy or custom creating liability under § 1983."); *Barrett v. Kocher*, 127 Fed.Appx. 697, 698 (5th Cir. 2005) ("An official policy consists of, among other things, a policy statement or regulation that is officially adopted and promulgated by the municipality's lawmaking officers. An official policy also includes a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. In narrow circumstances, even a single incident can establish an official policy where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.").

Allison relies on two cases in support of his argument that his allegations are specific enough to survive a motion to dismiss: *Davis v. Corr. Med. Sys.*, 480 F.Supp.2d 754 (D. Del. 2007), and *Ponzini v. Monroe Cnty*, 897 F.Supp.2d 282 (M.D. Penn. 2012). In *Davis*, 480 F.Supp.2d at 758-59, an inmate sued a contractor hired by the state to provide medical care to inmates claiming the company had a policy of deliberate indifference to the medical needs of inmates. The Pennsylvania district court held that the plaintiff alleged a policy or custom of ignoring medical complaints and delay of treatment sufficient to survive a motion to dismiss where the plaintiff alleged the

5

company's employees were aware of his condition and consistently ignored his complaints until a state senator intervened. *Id.* Similarly, in *Ponzini*, 897 F.Supp.2d at 291-92, an inmate's family sued a medical company alleging the company's policy of deliberate indifference led to the death of the inmate. The complaint alleged the inmate's constitutional rights " were directly and proximately caused by the encouragement, tolerance, ratification of, and/or deliberate indifference of [the company's] policies, practices, and/or customs of refusing, delaying, failing to coordinate, or otherwise interfering with inmates' necessary treatment with medical specialists." *Id.* The Pennsylvania district court held that the allegation within the complaint was sufficient to survive a motion to dismiss. *Id.* at 292.

Both *Davis* and *Ponzini* are either distinguishable or not persuasive. In *Davis*, the company's employees were aware of the inmate's condition and consistently ignored his complaints until a state senator intervened. There is no similar allegation that Defendants Lombardi, Crawford, and Harris had any knowledge of Allison's condition. As for *Ponzini*, the Court does not believe that a mere allegation of a custom or policy of denying medical care to inmates is sufficient to state a claim against a prison administrator. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does it suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Like the allegations in *Iqbal*, Allison's allegation that Lombardi, Crawford, and Harris "caused and allowed the development . . . of a custom [or] policy . . . which included a deliberate indifference to the serious medical needs of inmates" is only a formulaic recitation of the

6

elements of Allison's § 1983 deliberate indifference claim and are not entitled to be assumed as true. *See, e.g.*, *Wellman v. Missouri Dept. of Corr.*, 2009 WL 2391940 at *3 (E.D. Mo. 2009) ("[P]laintiff alleges in a conclusory fashion that a policy of CMS led to his injuries. . . . [C]onclusory allegations are not entitled to an assumption of truth.") (citing *Iqbal*); *Lutz v. Delano Union School Dist.*, 2009 WL 2525760 at *5 (E.D. Cal. 2009) (allegation that employees were "acting. . . in accordance with a policy, custom, and practice" was conclusory and "unsupported by any factual allegations as to what the policy, custom, and practice consists of, who established it, when, or for what purpose.") (citing *Iqbal*); *Williams v. City of Cleveland*, 2009 WL 2151778 at *4 (N.D. Ohio 2009) ("To merely state that the City has a policy or custom is not enough; Plaintiff must allege facts, which if true, demonstrate the City's policy, such as examples of past situations where law enforcement officials have been instructed to ignore evidence.") (citing *Iqbal*).

Allison's Complaint does not suggest any facts to show that Lombardi, Crawford, or Harris had personal knowledge of his medical needs, approved or knew of John Doe's indifference to those needs, or authorized, created, or knew of a policy of deliberate indifference to the medical needs of inmates at FRDC. Accordingly, Allison has failed to state a claim under 42 U.S.C. § 1983 against Lombardi, Crawford, or Harris, and their motion to dismiss is therefore granted. Because the Court finds that Allison has failed to state a claim upon which relief can be granted against Lombardi, Crawford, and Harris, there is no need to determine whether they are entitled to qualified immunity.

### III.    Conclusion

For the reasons set forth above, Lombardi, Crawford, and Hill's motion to dismiss [Doc. 8], is GRANTED.

                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated:  March 31, 2014
Jefferson City, Missouri